John SHERIDAN et al., Plaintiffs,

v.

LIQUOR SALESMEN'S UNION, LOCAL 2, D.R.W. & A.W.I.U.A., AFL–CIO, et al., Defendants.

No. 69 Civ. 2484.

United States District Court, S. D. New York.

June 19, 1973.

See also, D.C., 303 F.Supp. 999.

Godfrey P. Schmidt, New York City, for plaintiffs.

Schulman, Abarbanel & Schlesinger by Howard Schulman, and Victor Feingold, New York City, for defendant Union.

Weiss, Rosenthal, Heller & Schwartzman, New York City by E. Cooke Rand, New York City, for defendants Liquor Wholesalers.

Buchman & Buchman, New York City, for defendant William Grant & Sons, Inc.

BRIEANT, District Judge.

Plaintiffs, as wholesale liquor salesmen, commenced this action on June 9, 1969 by the filing of a complaint, denominated as a class action, naming the Liquor Salesmen's Union Local 2 as the sole defendant and charging unfair representation, relating to the method of computing their wages. On April 17, 1970, a third-party complaint was filed against 27 liquor wholesalers (later reduced to 18), who are said to be employers of members of the class plaintiffs seek to represent. By order dated April 6, 1972 (Motley, J.), the 18 remaining third-party defendant employers were made parties defendant, and plaintiffs were authorized to file a complaint seeking relief directly from them, as well as from the union.

Plaintiffs filed their amended complaint on April 11, 1972. The amended complaint differed from that originally pleaded in that the 18 employers alleged to have improperly computed commissions are named as parties defendant along with the union, and plaintiffs allege that these employers violated the collective bargaining agreements in force between the employers and Local 2. The amended complaint states that the class consists of approximately 1,000 salesmen, as opposed to approximately 1,600 claimed in the original complaint. Plaintiffs claim that 1,600 is the total membership of Local 2, while 1,000 represents the number of salesmen actually underpaid. (Plaintiffs' brief, p. 10.)

Plaintiffs move, by notice dated March 15, 1973, for an order determining that this action may be maintained as a class action. Certain employer defendants move for an order dismissing the action as a class action pursuant to Local Rule 11A(d) of the Civil Rules of this Court.

Local Rule 11A(c) provides:

"Within sixty (60) days after the filing of a pleading asserting a claim for or against a class, the party asserting that claim shall move for a determination under Fed.R.Civ.P. 23(c) (1) as to whether the action is to be maintained as a class action and, if so, the membership of the class."

The effective date of Rule 11A was April 30, 1970, long prior to the date the amended complaint was filed. Accordingly, plaintiffs' motion for determination of class action status is not timely.

Local Rule 11A(c) provides that the Court may postpone a determination of class action status pending discovery. Plaintiffs assert, in justification of their omission, that it was necessary for them to receive complete answers to interrogatories in order to

make the motion.[1] However, Rule 11A(c) contemplates only that the Court may, as a matter of judicial discretion, postpone its class action determination pending discovery—not that a party may make such a unilateral decision to defer application, and thereby excuse himself from compliance with the rule. The local rule represents an important statement of policy which must be adhered to in the interests of justice in a field of litigation where the possibilities of abuse and oppression are ever present.

■ Plaintiffs urge that the local rule may not be applied to actions commenced prior to its adoption. But the rule applies to "pleadings," and not to actions. The pleading in question was filed after the rule was adopted. The rule is a reasonable exercise of our rule making power, and valid.

■ The Court is not required to dismiss a class action, or refuse class action status, simply because of failure to comply with the local rule. Dismissal is only one of several sanctions the Court may invoke under Rule 11A, and if this were the only problem presented, we would not penalize plaintiffs or their class because of counsel's failure to comply.

However, it is also clear that plaintiffs' action does not satisfy the requirements of Rule 23, F.R.Civ.P., for maintenance of a class action.

Plaintiffs have not defined the class they seek to represent with sufficient precision, nor does it appear capable of such definition.

Since 1956, some, but not all, of the non-direct liquor wholesalers with whom the defendant local union has had labor contracts resulting from area-wide collective bargaining, paid their salesmen commissions according to the actual, or "post-off" selling prices used from time to time, rather than the higher, list prices.[2] Other wholesalers paid their men, under the same labor agreement, on full list price, even when the liquor actually sold for less. The labor agreement had at all material times a provision [Paragraph VII(D)], which reads as follows:

"A salesman shall report to the Union within 30 days any violation on the part of the Employer in accordance with the terms of this agreement, and the Union on the behalf of the salesman will make demand of the Employer for his proper compensation. The failure of the salesman to file a complaint within 30 days receipt of any payment or any settlement period in which it is claimed insufficient compensation was received by such salesman shall preclude the salesman from ever making the claim for such additional compensation which he claims to be due. Such failure shall not in any wise prejudice or prevent the Union from enforcing any of its rights or remedies which it may have against the Employer by reason of such breach."

---

1. This action is more than four years old. Following the implementation of the Individual Assignment Calendar in this Court, effective July 1, 1972, the Court initiated a conference of counsel, in order to begin moving the case for trial. The conference was held on March 9, 1973, at which time, in view of the age of the cause, plaintiffs' attorney was directed to make his motion, returnable April 5, 1973, which was done. At the time of the conference of counsel, plaintiffs were in default of their obligations under Local Rule 11A.

2. These "post-off" prices are also referred to as the "temporary or promotional selling price listed for a limited period with the New York State Liquor Authority" (Amended Complaint, ¶ 36), and are sometimes effected by the employer-wholesalers in accordance with instructions or suggestions of the distillers. Such special prices have a legitimate function, that is to stimulate sales of particular brands or items for a limited period, at the expense of competing brands.

These plaintiffs (except Capolino, who works for a wholesaler who pays on full list prices regardless of actual price) are the only salesmen who filed such a claim or grievance. In this regard, at least, their claims are not typical of the class they purport to represent.

Against that factual background, the "class" is said by plaintiffs to consist of: "themselves and all liquor salesmen who belong to Local 2" (Complaint, ¶ 29) said to consist of "some 1,000 salesmen in the involved bargaining units" (*id.*).

Plaintiffs have specified no time period for which they purport to represent all such salesmen. They do not claim, expressly, to represent only those whose commissions were computed on "post-off" prices. It is not clear from the amended complaint whether plaintiffs seek to represent only salesmen currently employed by defendants, or all salesmen, whether presently employed or not, who have been deprived of commissions since 1956.

As previously noted, plaintiffs are the only union members who have filed grievances with the union or instituted legal action complaining of the long standing practice by which salesmen's commissions are computed by the employer defendants. It may well be that many members of the class plaintiffs seek to represent find that it is a business advantage in such a highly competitive industry to have their commissions computed on "post-off," rather than "list" prices.

It is an obvious fact of economic life that an employer, in deciding whether to cut prices, and if so, how far to cut them, will be affected by whether sales commissions will also be reduced. To the extent that price cutting increases sales volume, it is possible for a salesman to enjoy increased earnings, but at the expense, to some degree at least, of his fellow union members. There is thus an inherent conflict of interest between those salesmen who are paid on list prices, and those who are not, and between these plaintiffs, and those who find the allegedly improper practice puts more money in their pay envelopes. This inherent conflict of interest militates against declaring a class action here, and prevents defining the class.

That no substantial number of salesmen have protested against the present enforcement of the collective bargaining agreement should be accorded significance and suggests that plaintiffs are not adequate representatives of the class, or that any such class has no claim to adjudicate. Crawford v. Texaco, Incorporated, 40 F.R.D. 381 (S.D.N.Y. 1966).

■ The presence of this potential conflict of economic interest among the salesmen means that plaintiffs have failed to satisfy the requirement of F. R.Civ.P. 23(a)(4), that they "will fairly and adequately protect the interests of the class." Free World Foreign Cars, Inc. v. Alfa Romeo, 55 F.R.D. 26 (S.D. N.Y.1972).

■ Inasmuch as plaintiffs are the only members of the proposed class who have satisfied the requirement of Paragraph VII(D) of the collective bargaining agreement that a salesman must file a complaint with the union concerning an alleged violation in the computation of commissions within 30 days or be precluded from claiming any additional compensation, plaintiffs do not satisfy the requirement of F.R.Civ.P. 23(a)(3) that the claims and defenses of the representative parties be typical of the claims and defenses of the class. The issue of compliance with Paragraph VII (D) would be of central importance to the cases of the other salesmen, but not to these five plaintiffs.

This litigation received the attention of the Court of Appeals in 1971 (Sheridan v. Liquor Salesmen's Local 2, etc., 2 Cir., 444 F.2d 393). That Court reversed an order (*Ryan, J.*) which stayed this action pending arbitration proceed-

ings between the union, asserting in accordance with the labor agreement the claims of the salesmen whose commissions had been computed on the lower, or "post-off" prices, and those employers who had underpaid. Relying on Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967), and its progeny, the Court of Appeals held that the named plaintiffs could sue, and that they need not participate in the arbitration, or allow their union to resolve their claims by arbitration. It held, 444 F.2d at pp. 395–396:

> "[P]laintiffs' suit presents important issues which are not arbitrable and would not be resolved in the third-party action. Foremost among these is the question of whether the Union has been guilty of unfair representation in failing to enforce Par. VI(d) of the collective bargaining agreement. In this connection plaintiffs allege that Par. VII(d) (the 30-day limitation) represents a 'sweetheart' arrangement between the Union and Employers designed to defraud plaintiffs of commissions due them. [footnote omitted] Plaintiffs further contend that the Union and the Employers would not arbitrate in good faith but would seek to defeat plaintiffs' claims or to minimize the amount of damages recoverable for plaintiffs' benefit. The Union denies these claims and we of course express no views as to the merits. However, in view of these claims plaintiffs should not be compelled to arbitrate.

> 'But where the employee's case is based upon a conspiracy between his union and his employer to deprive him of his rights he cannot be forced to submit that issue to an ar-

bitration between the employer and the union. Such a procedure would fail completely to settle the issues between the union member and his union. It would entrust representation of the employee to the very union which he claims refused him fair representation, and it would present as adversaries in the arbitration procedure the two parties who, the employee claims, are joined in a conspiracy to defraud him.' (Hiller v. Liquor Salesmen's Union Local No. 2, 338 F.2d 778, 779 (2d Cir. 1964).)"

The other members of Local 2, the class plaintiffs would represent, made no such *Vaca*-type allegations. Although the existence of the controversy is generally known, and has been the subject of intensive pamphleteering in union elections (See JSC Newsletter, Nov., 1969, p. 3, Exhibit 4 to Affidavit of Howard Schulman, Esq., sworn to April 3, 1973), apparently the rest of the class members allowed their union to go to arbitration with the employers on the issue.[3]

The arbitration resulted in an "Award of Arbitrator," dated May 22, 1973 made after an Arbitration Hearing in the New York State Board of Mediation, before a panel arbitrator of that Board, the Honorable Maurice C. Benewitz.

The Arbitrator's decision, which fills some forty-two pages, resulted in an adverse determination. These five plaintiffs elected not to be bound by the arbitration, to the extent they have the right to do so [i. e., if their *Vaca*-type claims are valid]. But as to the other men in the proposed class, and their employers, the arbitration award is at least

3. The cited article reads as follows:
"THIS IS IT IN A NUTSHELL!!
The Joint Salesmen's Committee on behalf of all the liquor salesmen has been fighting Brandenburg, Matranga and the rest of the incompetent leaders in Local #2 in three separate court battles.

One United States District Court case consists of two causes of action. In the first action the J.S.C. wants to collect $960,000 in *back commissions* for the salesmen."

presumptively correct, and binding. The legal effect of the outstanding arbitration award is a mixed question of fact and law with respect to which these named plaintiffs have no interest, but is determinative of the claims of all the rest. Here again, we do not have "claims or defenses of the representative parties [which] are typical of the claims or defenses of the class" [Rule 23(a)(3)].

No affirmative showing has been made that plaintiffs are representative parties who will fairly and adequately represent the class. Rather, the record of the action indicates otherwise.

Plaintiffs are members of a political clique in the union who, as is their right, have sought elective office, basing their campaigns at least in part on their contention sought to be litigated here, that the existing holders of elective power in the union were colluding with some employers. For example, in their article entitled "How?" in the April, 1968 issue of the J.S.C. Newsletter, and sent to the membership, they wrote:

> "You can make money and *Keep* it. *Vote The Union Officials Out With A Secret Ballot* and you *will not* be faced with contract violations that cost you a fortune.
>
> Page 7, Article G, in your Union Contract specifically states that you are supposed to receive your commissions on the base *price* of a case of goods, *not* on the post off price of that same merchandise.
>
> Use this chart to figure your *Monthly Losses*. For example, using an average base price of $50.00 per case for hard goods, we find that if an item or items are *posted off* $1.00

per case and you are being paid on the *post off* price of $49.00 instead of $50.00, you are losing $3.00 in 'L' accounts on 100 cases and $4.50 in 'RL' accounts on 100 cases. . . . [Chart omitted.] . . . . .

> What a motley group of Union Officials—they *Ignore This Flagrant Violation* of our contract and expect the salesmen to like it . . . . Well, they've another guess coming . . . . that's right! . . . . You guessed it, who needs *Them?*"

Despite all this furor, and notwithstanding success they have enjoyed in other litigation against the union leadership, plaintiffs have been uniformly unsuccessful in winning any elections.

▮ While this is only entitled to slight weight, it raises a doubt as to whether these plaintiffs are truly representative of those whose claims they would champion.[4]

A greater doubt is raised by the comment of the Court of Appeals (p. 396 of 444 F.2d):

> "Plaintiffs' predicament is due in great measure to their own inconsistencies in the prosecution of their *Vaca*-type action. After filing with the Union a grievance seeking arbitration of their claim for additional commissions, they commenced the lawsuit against the Union. After successfully opposing joinder of the Employers as indispensible parties they sought joinder of the Employers; and after indicating willingness to participate in a joint arbitration of plaintiffs' claims, plaintiffs insisted on having their claims adjudicated by the court. It further appears that plaintiffs, after seeking the Union's cooperation in the

4. The Staff of the J.S.C. Newsletter in April, 1968, listed the following persons in the order named:

| | |
|---|---|
| Al Capolino | — Editor |
| Godfrey Schmidt | — Legal Advisor |
| Walter McDonough | — Chairman |
| Frank Maurio | — Secretary |
| Mickey Sabatino | — Treasurer |
| Jack Sheridan | — Investigations |
| Lou Gutin | — Reporter |
| Michael Puma | — Coordinator |
| Louis Werner | — Circ. Mgr. |

prosecution of their claims against the Employers, refused to turn over to the Union important records and evidence needed by the Union to prosecute the claims."

The conduct referred to violates the maxim that one is not allowed "to blow hot and cold" in a lawsuit.[5] Although permitted in this case, such conduct indicates plaintiffs are not representative parties who will fairly and adequately protect the interests of the class. Rather, it indicates that their litigation, while it may have intrinsic merit, may also be motivated by subsidiary concerns, to harass, and expose as inept, their political adversaries in the union.

There are other reasons why the litigation should not proceed as a class action. A number of the members of the purported class are now serving, or have at some time since 1956 when the difficulty arose, served as shop stewards or business agents or had other direct participation in union affairs. No such person should be part of a class action where he is, in effect, complaining of his own actions, or wrongs committed against the class, to which he was a party.

To the extent *Vaca*-type relief is sought, there is no need for class action treatment. If equitable remedies are granted to put the alleged collusion to an end, or relieve the union, prospectively, from a "sweetheart" arrangement voidable for fraud or if the Court after trial otherwise sustains these claims, the result will benefit all members.

Plaintiffs' motion to determine that the action may be maintained as a class action is denied, on the merits, and without regard to their failure to comply with Local Civil Rule 11A(d). They may continue to pursue their litigation in their individual capacities, to recover any amounts which those plaintiffs oth-

er than Capolino are owed by their own employers, and also, against all defendants, to sustain their right to fair union representation.

So ordered.

---

5. See Beck, Walter S., "Estoppel Against Inconsistent Positions in Judicial Pro- ceedings," 9 Brooklyn Law Review 245 (1940).