Charles EAGLE et al., Plaintiffs,

v.

Edward I. KOCH et al., Defendants.

No. 78 Civ. 2010 (RWS).

United States District Court,
S. D. New York.

May 2, 1979.

Ronald Podolsky, New York City, for plaintiffs.

Allen G. Schwartz, New York City, Corp. Counsel, by Ira L. Blankstein, Asst. Corp. Counsel, New York City, Mitchell J. Sassower, Rego Park, N.Y., for defendants.

## OPINION

SWEET, District Judge.

This action is brought by individual holders of peddlers' General Venders Licenses, on behalf of themselves and others similarly situated, seeking redress for alleged violations of their constitutional rights.

The defendants, who are being sued in their representative capacities, are Edward I. Koch, Mayor of the City of New York, Carol Bellamy, President of the City Council, Bruce Ratner, Commissioner of the Department of Consumer Affairs, and Robert J. McGuire, Police Commissioner. Jurisdiction is grounded upon 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

To the extent here relevant, the complaint alleges that the plaintiffs are being deprived of their property without due process of law.[1] Specifically, they assert that their goods are, in effect, being confiscated by the defendants and their agents without a hearing at which the propriety of the taking is adjudicated. The taking of the peddlers' goods is authorized by Local Law No. 77, specifically sections B32–503.0 (k)[2] and B32–506.0(b)[3] and certain Inter-

---

1. The original complaint in this action alleged violations of the plaintiffs' constitutional rights on several bases. By opinion dated December 5, 1978 this court granted defendants' motion to dismiss the complaint except as to the one issue set forth in the text of this opinion.

2. Section B32–503.0(k) provides:

Where exigent circumstances exist and a police officer, or other authorized officer or employee of any city agency gives notice to a general vendor to temporarily move from any location

such general vendor shall not vend from such location. For the purposes of this subdivision, exigent circumstances shall include, but not be limited to, unusually heavy pedestrian or vehicular traffic, existence of any obstructions in the police space, an accident, fire or other emergency situation, a parade, demonstration or other such event or occurrence at or near such location.

3. Section B32–506.0(b) provides:

If a general vendor does not move his goods, vehicle, pushcart or stand when directed to do

im Orders issued thereunder. The relevant Interim Orders provide *inter alia*, as follows:

### Interim Order No. 46, paragraph 7:

If a licensed vendor refuses to move his goods, vehicle, pushcart or stand when directed by a police officer due to exigent circumstances (traffic congestion—pedestrian or vehicular, accident, emergency situation, parade, demonstration, or similar event at or near such location) the officer concerned may remove the goods, vehicle, etc., to the Station House, in addition to issuing a summons for failure to move as required by Section D22–16.0 Subd. b (Food Vendors) or Section B32–506.0 Subd. b (General Vendors). However, food (as defined in Appendix "A") is not to be the subject of such removal. The owner or other person entitled to such property may request release of this property at the location where the property is being safeguarded. Property Clerk Invoice prepared for REMOVED property will be marked "REMOVED—SAFEGUARD."

### Interim Order No. 46–3:

Subject: REMOVAL AND STORAGE CHARGES FOR PEDDLERS EQUIPMENT AND WARES

\* \* \* \* \* \*

PURPOSE   To collect and forward fees received for vehicles, carts, stands or goods of licensed peddlers removed under EXIGENT CIRCUMSTANCES and stored in police department facilities.

\* \* \* \* \* \*

PROCEDURE   When the owner or person lawfully entitled to possession appears at a department facility to claim peddler's vehicle, cart, stand or goods:

so by a police officer or other authorized officer or employee of the city in compliance with the provisions of subdivision k of section B32–503.0 such officer or employee is authorized to provide for the removal of such goods, vehicle, pushcart or stand to any garage, automobile

S.H. OFFICER OR PERSON IN CHARGE OF STORAGE FACILITY

1. Collect a removal fee as follows:
   a. If a department vehicle removes vehicle, cart, stand—$65.00
   b. No department vehicle used in removing vehicle, cart, stand—$20.00
   c. Goods, if taken into custody with vendor's vehicle, cart, or stand—$10.00
   d. Goods only, no vehicle, cart or stand—$20.00
2. Collect storage fee of $5.00 per day or part of day. No storage charge imposed for day vehicle, cart, stand or goods initially removed.

\* \* \* \* \* \* \*

The foregoing Interim Order is promulgated in order to implement the provisions of the above cited newly enacted sections of the Administrative Code which provide that the owner or other person lawfully entitled to the possession of a licensed vendor's (peddler's) equipment and/or wares which were seized and removed under "exigent circumstances" may be charged with reasonable costs for such removal and storage payable prior to their release.

Plaintiffs challenge the constitutionality of the relevant sections of Local Law No. 77 and the interim orders promulgated thereunder, as written and as applied to them.

On May 1, 1978 this case was commenced by an Order to Show Cause seeking a preliminary injunction restraining certain acts of the defendants. On May 5, 1978, the return date of the Order, the parties entered into a stipulation which, *inter alia*, established guidelines under which police officers could remove the goods and peddler cart of a licensed general vendor under exigent circumstances pursuant to the relevant sections of the New York City Administrative Code heretofore set forth. This stipulation, which was "so ordered" by the Honorable John M. Cannella of this court,

pound or other place of safety, and the owner or other person lawfully entitled to the possession of such vehicle, pushcart, stand or goods may be charged with reasonable costs for removal and storage payable prior to the release of such goods, vehicle, pushcart or stand.

has been continued in effect pending this decision.

On August 1, 1978, the plaintiffs moved to hold certain police officers in contempt for alleged violations of the aforementioned "so ordered" stipulation. After an evidentiary hearing on the motion this court determined that there had been several violations of the "so ordered" stipulation by certain officers in that goods were being confiscated without the requisite warning provided for in the stipulation and the relevant sections of the Administrative Code. Thereupon an order was entered directing the City of New York to return the removal fees paid by the peddlers in question. On February 5, 6 and 7, 1979, the action was tried to this court. Subsequent to the trial plaintiffs moved for class action certification, which defendants have opposed. This opinion constitutes this court's decision on the motion for class certification and its findings of fact and conclusions of law with respect to the merits of the action.

To qualify for class action status the requirements of Rule 23, Fed.R.Civ.P., must be satisfied. In this regard all the requirements of Rule 23(a) must be fulfilled and at least one of the subdivisions of Rule 23(b). Furthermore, the Local Civil Rules of this district must also be satisfied.

■ Upon consideration of the full record, including the facts developed at trial, this court is not persuaded that the requirements of Rule 23 have been met. As to subdivision (a) of the rule, there has been no showing that the class is so numerous that joinder of all members of the class is impracticable. In fact, the record is devoid of any information regarding the number of licensed general vendors in the City of New York. In addition, "the named plaintiffs' failure to protect the interests of class members by moving for certification . . . bears strongly on the adequacy of the representation that those class members might expect to receive." (Citation omitted). *East Texas Motor Freight v. Rodriguez*, 431

U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977). *East Texas*, like the present action, was an action in which the motion for class certification was not made until subsequent to the trial. Further, failure to move within 60 days of the commencement of this action is in direct violation of Local Civil Rule 11A(c) of this district and cannot be ignored by this court. *See Walker v. Columbia University*, 62 F.R.D. 63 (S.D.N.Y.1973); *Sheridan v. Liquor Salesman's Union, Local 2*, 60 F.R.D. 48 (S.D.N.Y.1963).

Finally, outside of the individual claims for damages of each member of the class, the relief sought is equitable in nature. It is this equitable relief, with respect to the constitutionality of the regulations involved and the issuance of declaratory and injunctive relief, that forms the crux of the plaintiffs' claims.[4] As to such relief, defendants concede in their post trial memorandum that "if the plaintiffs obtain a judgment declaring the law unconstitutional and an injunction against its enforcement, the defendants can be expected to abide by the judgment whether or not the action is designated a class action." In such circumstances the determination herein runs to the benefit of all who are similarly situated to the plaintiffs and class action designation is merely a formality. *Galvin v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *Vulcan Society of N.Y.C. Fire Dept., Inc. v. Civil Service Commission of City of New York*, 490 F.2d 387, 399 (2d Cir. 1973). Therefore, based upon the practical insignificance of this motion, as well as the deficiencies with respect to the prerequisites of subdivision (a) of Rule 23, class action certification is denied.

■ The evidence at trial established that throughout New York City the wares of licensed peddlers are being confiscated under what police officers consider to be the exigent circumstances set forth in Local Law No. 77. The goods are taken by the officers to the nearest precinct, where they

---

4. In fact on the issue tried to this court there is no appropriate claim for actual damages. The only monetary relief here in issue is whether or not plaintiffs' removal fee will be returned to them pending a full hearing on the appropriateness of the removal. *See* discussion *supra*.

are vouchered by the property clerk on duty. In most instances the peddler is not taken to the station with his goods and must therefore arrange to get to the precinct to reclaim his goods. At the station house the peddler is charged a fee of anywhere from $10 to $65 to cover the expenses of the confiscation. Only upon payment of the fee are the goods returned. If a peddler for some reason cannot, or choses to not, reclaim his goods immediately after confiscation, they are held by the Police Property Clerk at his office in Queens. The peddler must then pay the removal fee and storage charges of $5 per day in order to reclaim his goods.

There is no provision in Local Law No. 77 for any hearing, either administrative or judicial, to determine preliminarily or otherwise the propriety of a confiscation. The defendants assert that due process is provided by the hearing afforded to the peddler upon the charges set forth in the summons received when the goods are confiscated. *See generally Harris v. McGuire,* 78 Civ. 1589 (S.D.N.Y. July 3, 1978).

The Supreme Court has, in recent years, had several occasions to review statutes involving the taking of property prior to an opportunity to be heard. *See Fuentes v. Stevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). As stated by Judge Frankel in *Harris v. McGuire* :

> In the aftermath of this trial, it seems clear that deprivation of private property without a prior hearing is suspect, but may pass muster under certain circumstances, including but not limited to the exceptions carved out in *Fuentes* itself. Additional exceptions are appropriate where the challenged procedure possesses attributes which tend to ensure that its use is limited to pressing situations, that any erroneous action can be remedied, and that a prompt hearing dealing with all of the issues relevant to the summary procedure is available.

The *Fuentes* court designed a three criteria test to determine whether certain situations are deemed "extraordinary" such as to qualify as exceptions to the pre-hearing rule.

> "First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance."

Id. 407 U.S. at 91, 92 S.Ct. at 2000.

The facts in the case before this court satisfy *Fuentes'* three prong test. First, the seizure of the peddlers' property was necessary to secure a general public interest, to prevent both pedestrian and traffic accidents. Second, successful prevention of accidents could only be accomplished through prompt police action. This is especially true in the situation where the peddler has refused to move after such a request has been made. Lastly, the persons initiating the seizure are police officers who must fairly determine whether the circumstances are such that removal is necessary for the safety of the public. The definition of exigent circumstances is sufficiently narrow, considering the situation here involved, to satisfy this element of the test.

However, irrespective of the Local Law No. 77's satisfaction of the *Fuentes* test, or any other exception allowing a deprivation of property prior to a hearing, notice and an opportunity to be heard must follow closely on the heels of the taking. "[T]he opportunity given for ultimate judicial determination of liability [must be] adequate. *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1973), *quoting, Phillips v. Commissioner,* 283 U.S. 589, 596–97, 51 S.Ct. 603, 75 L.Ed. 1289 (1931). *See also Ewing v. Mytinger & Casselberry,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950).

Here the opportunity for a hearing on the summons is not adequate to satisfy the due process requirements brought into play by the taking of the plaintiffs' property. Although the summons procedure pursuant to New York law provides for a hearing, the evidence at trial established that the hearing on the summons is not sufficiently timely to satisfy the due process requirements which come into play when a citizen's private property is taken.

Prior to the confiscation of each peddler's property the state has sufficient interest, under circumstances which are exigent, to act prior to a hearing. However, this interest no longer persists once the goods are off the public thoroughfare. At that point, or shortly thereafter, a hearing must be afforded each peddler to at least preliminarily determine the propriety of the taking. The hearings on the summons do not satisfy this requirement since the evidence established that the City of New York does not effectively provide for prompt hearings within its criminal violation summons procedure.

During 1978 over 450,000 summonses were issued in the City of New York. Approximately twenty-five percent of these summonses were issued to peddlers. The date each summons is made returnable is at least twenty-three days after issuance and in most instances anywhere from thirty to sixty days. The twenty-three days is needed for administrative reasons. Although theoretically the system provides for a prompt hearing, the (twenty-three days) in actuality is unworkable. The City has but one judge at any particular time to hear the cases on summons for which a not guilty plea is entered. Further, there are delays and adjournments as a result of the inability to get the officers into court on a particular day and for other reasons. The proof at trial established that irrespective of a peddler's not guilty plea and desire for a prompt hearing on a summons, in virtually no instance is a prompt hearing afforded the peddler.[5] Therefore, the hearing procedure with respect to the summonses does not satisfy the due process requirements which come into play upon the confiscation of property.

In sum, Local Law No. 77 itself has no provision for a hearing upon the confiscation of property under exigent circumstances. Therefore, the law does not withstand constitutional attack unless a hearing is otherwise provided. Although the hearing on the summons issued at the time of the confiscation could satisfy this requirement, for the reasons stated, it does not. Based upon the foregoing Local Law No. 77 cannot withstand constitutional attack. Having no provision itself for a hearing upon confiscation, the law is unconstitutional unless a prompt hearing is otherwise provided.

■ There is no doubt that the federal court has the remedial power to suspend the operation of concededly valid, as well as unconstitutional, state statutes. *See generally Louisiana v. United States*, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965). In § 1983 actions the court should issue a decree that will so far as possible remedy past violations as well as bar violations in the future. *See generally id.* at 154, 85 S.Ct. 817. Although *Louisiana v. United States*, was a discrimination action, there is no reason for the policy to change when the deprivation is as to other constitutionally protected rights. This is especially true in this instance, where the deprivation affects the ability of the plaintiffs to earn a living. Further, not only have the plaintiffs' constitutional rights been adversely affected in the past, but there has been no showing that there is any plan or anticipated changes in circumstance which will alter the situation in the future.

However, in fashioning the remedy this court is mindful that

**5.** Neville Christian, a named plaintiff, testified that on August 30, 1978 and September 1, 1978 his property was confiscated pursuant to the statute in question. As of the date of the trial in this proceeding he had not had a trial on the summonses issued at the time of the confiscation. Testimony by other witnesses for the plaintiffs confirmed that there is widespread non-compliance with the requirement that a prompt hearing be afforded when a citizen's private property is confiscated.

[i]n fashioning injunctive relief, a court is exercising equitable powers which are left to its sound discretion. *Inland Steel v. United States*, 306 U.S. 153, 156, 59 S.Ct. 415, 417, 83 L.Ed. 557, 560 (1939); *Berman v. Narragansett Racing Ass'n*, 48 F.R.D. 333, 336 (D.R.I.1969). The cases are legion in affirming a court's power and indeed responsibility to consider the public interest and the interest of third parties in determining the scope and propriety of interim and final injunctive relief. In *Inland Steel v. United States*, supra [306 U.S.] at 157, 59 S.Ct. at 417, 83 L.Ed. at 560, the Supreme Court stated that it is a "governing principle that it is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all—including the public—whose interests the injunction may affect." (Footnote omitted).

*R. I. Committee on Energy v. Gen. Services Administration*, 411 F.Supp. 323, 327 (D.R.I. 1976) *modified on other grounds* 561 F.2d 387 (1st Cir. 1977). Here the public interest in safe and unobstructed walkways must be balanced against the rights of licensed individuals not to have their constitutional rights abridged. Both interests can be adequately protected by the institution of a prompt hearing after confiscation.

The provisions of Local Law No. 77 and related Interim Orders dealing with confiscation of goods under exigent circumstances are unconstitutional, as written and as applied to the named plaintiffs and throughout the City of New York. As to past confiscations, the defendants are to return any property taken, or removal and/or storage fees collected, for which no hearing has to date been held. As to any future confiscations, the peddler must be given a prompt hearing, within 30 days of the taking. Failing such hearing, the goods shall be returned or alternatively the confiscation fee paid by the peddler to obtain repossession shall be returned. All other requests for relief are hereby denied. The parties are directed to submit a judgment on notice within ten days of this opinion.

IT IS SO ORDERED.