OPINION OF THE COURT
Edward F. McLaughlin, J.
This is an action for declaratory judgment in which the plaintiff challenges the constitutionality of two recently enacted amendments to the Traffic Code of the City of Syracuse. A companion article 78 proceeding seeking a stay of enforcement was commenced by the plaintiff simultaneously with this action by order to show cause dated October 13, 1978.
After hearing oral argument on October 30, 1978, the court granted plaintiff a hearing pursuant to CPLR 2218 and issued a preliminary injunction pending determination of the action. The hearing commenced on November 20, 1978 and concluded on November 21, 1978.
Because an article 78 proceeding is an improper vehicle for determination of constitutionality (Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449; Berenson v Town of Newcastle, 38 NY2d 102), the court, while consolidating the underlying papers of the two proceedings, renders its decision as a declaratory judgment.
Plaintiff is the owner of a mobile restaurant that he has operated since May of 1977 under a license certificate issued by the City of Syracuse at an annual fee of $60. Approximately 14 other mobile food vendors currently hold such a license, although plaintiff’s is the only mobile restaurant currently operating in the downtown special assessment district. In addition to the vendor’s license, plaintiff holds a permit from the Onondaga County Department of Health *455 pursuant to Part 14 of the New York State Sanitary Code. (10 NYCRR Part 14.)
Plaintiffs mobile restaurant consists of a van equipped with grill, refrigerator, warmers, coffee maker, and various other articles of equipment designed for fast food preparation. Plaintiff estimates that he has invested approximately $50,000 in such equipment for his vehicle. Unlike most other mobile food vendors who sell prepackaged cold sandwiches, donuts and the like, plaintiff offers hot foods, including such items as hamburgers and hot dogs, which are not prepared until ordered by the customer. Even cold dishes such as salads are prepared daily on location to preserve freshness. According to plaintiff, the equipment daily requires an hour of "warm-up” time in the morning before use and an hour of "tear-down” and cleanup time in the afternoon. Although plaintiff’s normal working day begins at about 9:00 a.m. and concludes at 5:00 p.m., the lunch hours of 11:00 a.m. through 2:00 p.m. are the busiest and most important part of his business day.
The present dispute is the latest episode in an ongoing controversy which erupted soon after plaintiff commenced business in the Syracuse downtown area over 15 months ago. Plaintiff originally located his vehicle in a "No Parking” zone on the north side of the 200 block of East Onondaga Street just west of Montgomery Street and adjacent to Columbus Circle. A good number of plaintiffs customers worked in nearby office buildings and would consume his goods in the Columbus Circle area, on the north side of East Onondaga Street.
At the time plaintiff commenced operating his mobile restaurant at Columbus Circle, the section of East Onondaga Street in question was controlled by two traffic signs. The first was located immediately west of the intersection of East Onondaga Street and Montgomery Street and the second was located immediately to the west of a driveway entrance connecting East Onondaga Street and the Cathedral of the Immaculate Conception. Both signs designated this area as a "No Parking” zone. Immediately to the west of the second "No Parking” sign is a series of parking meters.
The intersection of East Onondaga and Montgomery Streets forms a 90-degree turn in which traffic is permitted to flow only in a one-way direction westerly on East Onondaga Street. At its junction with Montgomery Street, East Onondaga Street is 22 feet wide for approximately 50 feet until approxi *456 mately the eastern side of the driveway leading to the cathedral, at which point the street gradually widens to 40 feet.
In early May of 1977, plaintiff daily placed his vehicle between the intersection of East Onondaga and Montgomery Streets near the eastern edge of the driveway leading to the cathedral in a "No Parking” zone and dispensed his wares. During this period of time, it is alleged that complaints were raised by nearby restaurant owners claiming that the plaintiff was illegally parked and unfairly drawing business from the conventional downtown restaurants. On May 18 and May 19, 1977 the city changed the afore-mentioned "No Parking” signs to "No Standing At Any Time”. Thus plaintiff would be in violation of the city Traffic Code if he placed his mobile restaurant in this location.
Later the city agreed to remove the first parking meter immediately west of the cathedral driveway and in its place create a loading zone. Plaintiff would thus be permitted to locate his mobile restaurant in that area but would be required to move every 30 minutes in order to make the loading zone available for other commercial vehicles that should desire to use it. Subsequently, plaintiff instituted an article 78 proceeding to have the "No Standing” signs returned to the original designation of "No Parking”. Such relief was denied in an unreported decision of Justice Leo F. Hayes dated July 13, 1978 (Matter of Barr v Storto). The court held that it was not an abuse of discretion for the Commissioner of Transportation to decide that public safety and general traffic conditions would dictate that no vehicles would be permitted to stand between the intersection of East Onondaga and Montgomery Streets and the eastern edge of the driveway leading to the cathedral. The court further stated that plaintiff’s license in no way granted him the right to the continuous use of a particular street area in the City of Syracuse, and that the requirement that plaintiff move from a loading zone every 30 minutes was a fair and reasonable regulation.
In an effort to resolve this continuing conflict, the Common Council of the City of Syracuse in early 1977 began to consider possible solutions. Members of the public, including plaintiff and other downtown restauranteurs, attended a number of open meetings of the council and expressed their views. The council directed a study by the traffic, transportation, licenses and franchise committee to investigate the proposed possible *457 locations for mobile vendors to park and conduct business at a stationary location within the downtown area.
On July 31, 1978 the Common Council by a vote of 6 to 2 duly adopted General Ordinance No. 29 and General Ordinance No. 30 as amendments to article XVIII and article XVI, respectively, of the Traffic Code of the City of Syracuse. Both amendments were to become effective on October 15, 1978.
Ordinance No. 29 prohibits conducting sales from vehicles parked adjacent to parking meters or in any location where parking, stopping or standing is prohibited, or in any area designated as a loading zone, parcel pickup zone or area designated for use by the handicapped. The ordinance further prohibits any person from depositing coins to extend parking or standing time in a metered space beyond the maximum time designated. The purpose of the ordinance as evidenced by the opening "whereas clause” is to insure a "turnover” of street metered parking spaces and to guarantee to a greater number of motorists the use of public street parking.
Ordinance No. 30 authorizes the Commissioner of Transportation to designate a mobile vendor stand for retail sales at four locations within the special assessment district: (a) on Jefferson Street between Montgomery and South State Streets, (b) on the north side of East Genesee Street between South State and Townsend Streets, (c) on West Washington Street between Clinton and Franklin Streets, (d) on Onondaga between Salina and Clinton Streets. Parking at each location would be limited to one mobile vendor vehicle for a 60-minute period between 10:00 a.m. and 3:00 p.m. If, at the end of 60 minutes, no other mobile vendor requested the stand, the original vendor could remain for an additional 60-minute period, but must thereafter vacate the stand and relocate elsewhere. The commissioner in selecting the site for the stand on the afore-mentioned streets would determine that no mobile vendor stand impede the normal flow of vehicular traffic, the use of the adjacent sidewalk by pedestrians or the safe use of the street by emergency vehicles. The ordinance further prohibited mobile vendor vehicles outside the special assessment district from operating from a fixed location, from remaining in one block for more than 60 minutes, and from remaining in the street in front of or within 50 feet of any premises if the owner, lessee, or tenant thereof objected thereto.
Plaintiff contends that Ordinances No. 29 and No. 30 are *458 illegal, unreasonable, oppressive and capricious exercises of the police power, are discriminatory and violative of the Fourteenth Amendment of the United States Constitution, articles I and IX of the New York State Constitution, subdivision 13 of section 20 of the General City Law and section 10 of article 2 of the Municipal Home Rule Law.
Plaintiff claims that the ordinances were not designed to further any legitimate objectives under the city’s police powers, but rather were conceived and enacted to protect taxpaying downtown restauranteurs from competition from mobile restaurant vehicles. He further contends that the restrictions relative to location of mobile vendor stands and to the one-hour time limitation for such stands are unreasonable and arbitrary conditions with respect to the operation of mobile restaurants. Plaintiff complains that use of the four specified mobile vendor stands would result in a decrease in his business and that the time restriction would make it impossible for him to set up his operation and sell his meals in a profitable manner.
Defendant contends that the ordinances were not enacted to prevent plaintiff from operating in the downtown area nor to put him out of business, but were created to allow mobile vendors to continue to do business downtown subject to regulations designed to promote public safety, lessen congestion in the streets, facilitate passage of emergency vehicles and alleviate vehicular traffic and parking problems. Defendant alleges that the East Onondaga Street location at Columbus Circle which plaintiff formerly used is a traffic hazard for emergency vehicles when plaintiff is parked at that site. Defendant notes that a mobile vendor stand has been provided in the Columbus Circle area at a site very near plaintiff’s former location, but on a street more conducive to the safe flow of traffic and pedestrian crossing. The city contends that plaintiff is in essence demanding that it exceed its authority and franchise a specified portion of a particular street to him. The city further contends that a time limitation on vending stands is a legitimate regulation with respect to a mobile unit inasmuch as a mobile restaurant should, in fact, be mobile. The city argues that such a time limitation insures access of the vending stands to all mobile vendors and decreases congestion in the streets at morning and evening rush hour periods. Finally, the defendant argues that the purpose of parking meters, that is, to promote the convenience of the public and insure general *459 access to parking spaces, is frustrated by the continuous use of a metered space by commercial vehicles selling their goods therefrom.
At the outset, it is important to recognize certain basic principles and standards by which constitutionality is determined by the courts. A strong presumption exists in favor of the constitutionality of a legislative enactment, and this presumption applies as strongly to a municipal ordinance as to enactment of the State Legislature. (Wiggins v Town of Somers, 4 NY2d 215; Robin v Village of Hempstead, 66 Misc 2d 482.) It is incumbent upon the plaintiff to rebut the presumption of constitutionality beyond a reasonable doubt. (Zumbo v Town of Farmington, 60 AD2d 350; People v Judiz, 38 NY2d 529.) Plaintiff’s burden is perhaps best summarized by the Court of Appeals in Lighthouse Shores v Town of Islip (41 NY2d 7, 11-12) where it states: "The exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities as well. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality. The ordinance may not be arbitrary. It must be reasonably related to some manifest evil which, however, need only be reasonably apprehended. It is also presumed that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or to be assumed, justifies the disputed measure, this court’s power of inquiry ends. Thus, as to reasonableness, plaintiffs in order to succeed have the burden of showing that 'no reasonable basis at all’ existed for the challenged portions of the ordinance. (See Matter of Van Berkel v Power, 16 NY2d 37, 40; I.L.F.Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, 269; Wiggins v Town of Somers, 4 NY2d 215, 218-219; Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 541.)”
Thus, the primary concern upon a claim of unconstitutionality is whether the statute in question, both as written and sought to be applied, constitutes a valid exercise of the police power by the Legislature and whether the means adopted by the statute are reasonably related to the purpose intended to be accomplished. (People v Johnson, 63 Misc 2d 800.)
Plaintiff claims that the ordinances in question were pri *460 marily directed at his business, in effect if not in name, and that the ordinances are therefore illegally discriminatory. However, Ordinance No. 29 applies to all commercial vehicles with respect to the vending prohibition and to vehicles in general with respect to the meters’ time limitation. Ordinance No. 30 applies to all mobile vendors as a general class and not to petitioner or mobile restaurants specifically. The validity of the statute or ordinance is to be determined from its general purpose and its efficiency to accomplish the end desired in cases which may be expected to arise, and not from its effect in the particular case which is before the court. (City of Rochester v Gutberlett, 211 NY 309; Barry v Village of Port Jervis, 64 App Div 268.)
Plaintiff has also questioned the need for the challenged ordinances, suggesting that no problems of traffic congestion, access to parking or public safety presently exist. As stated in Lighthouse Shores (supra), the necessity and advisability of the ordinance is for the legislative power to determine and not the court. The court finds that factual basis for the legislation is not so lacking in a reasonable basis as to be arbitrary.
Plaintiff’s primary argument is that the Common Council had an improper motive in enacting the ordinances in that the ordinances were enacted at the behest of downtown restauranteurs and were designed to eliminate competition by mobile restaurants. Defendant denies any improper motive, insisting that the ordinances were a legitimate exercise of police powers.
The law is clear that if a statute appears on its face constitutional and valid, the courts cannot inquire into the motives of the legislators (Farrington v Pinckney, 1 NY2d 74). Neither the motive of the members of the municipal legislative body nor the influence under which they act can be shown to nullify an ordinance duly passed in legal form within the scope of their power. (5 McQuillin, Municipal Corporations, p 287; see, also, Matter of Kupferman v Katz, 41 Misc 2d 124, 127, affd 19 AD2d 824, affd 13 NY2d 932; Glen Cove Theatres v City of Glen Cove, 36 Misc 2d 772, 774.)
In support of his contention that the ordinances in question are unconstitutional, plaintiff relies on the case of Good Humor Corp. v City of New York (264 App Div 620, affd 290 NY 312). In that case the City of New York adopted a local law which prohibited itinerant peddling on the streets. The *461 law was adopted upon a report to the City Council that its object was to prevent unfair competition by itinerant peddlers with storekeepers who pay rent and various taxes. The city offered evidence that some peddlers were unclean, insolent, fraudulent and at some places impeded traffic. The record showed that all of the criticized practices could be stopped by statutes, ordinances or sanitary regulations, aptly formulated and rigidly enforced. The Court of Appeals held the ordinance to be unconstitutional, noting that the power to adopt local laws is not broad enough to prohibit use of the street by lawful businesses for the sole purpose of protecting rent payers and taxpayers against competition.
In Good Humor the plaintiff was admittedly not subject to the criticisms made against some other peddlers, and a blanket prohibition was not justified where discrimination between the harmful and harmless vendors was practical and the public interest would be better served by regulation rather than complete prohibition.
The court in Good Humor (supra, p 318) went on to say that the statement of purpose in the committee report to the council is not conclusive; rather, the question presented is whether the local law is reasonably calculated to promote "other or additional purposes” which the local legislative body has constitutional power to make effective.
It is clear that problems of traffic congestion, public disorder, obstruction of free passage and related problems of public safety and convenience are such other or additional purposes that are legitimate concerns of government. (Duchein v Lindsay, 42 AD2d 100, affd 34 NY2d 636, app dsmd 419 US 809; Lincoln Bldg. Assoc, v Barr, 1 NY2d 413.) Any use of the streets, and certainly any use of the streets for private business purposes, which interferes unduly with the use of the streets by others for travel may doubtless be prohibited in a proper case by the legislative body (Good Humor, supra, p 317). A city cannot by ordinance prohibit peddling in certain sections of the city, where conditions in the restricted section are not dissimilar from those existing in many other areas, and where the ordinance bears no relation to the welfare of the public but is designed for the convenience and interest of a special class. (People v Cohen, 272 NY 319; People v Klinge, 276 NY 292.) A city may, however, validly prohibit vending in restricted areas and streets in order to prevent interference with traffic where discrimination *462 is based on traffic conditions. (See Bus Depot Holding Corp. v Valentine, 288 NY 115; Good Humor, supra, pp 319-320.)
Ordinances No. 29 and No. 30, insofar as they are directed toward legitimate legislative objectives and attempt to regulate rather than prohibit, are thus not in apparent conflict with the holding in Good Humor. The question remaining, then, is whether they regulate within recognized constitutional principles.
In Duchein v Lindsay (supra), the court, considering congestion, traffic control and similar problems, upheld a provision barring peddling from certain streets. Notice was taken that the listed streets contained the most congested area of the city. A provision prohibiting a licensed peddler from remaining in front of or within 50 feet of a premises whose owner or tenant objected was likewise found constitutionally valid, as was a provision prohibiting vehicles from standing in a street within 25 feet of any intersection. A provision prohibiting peddlers from operating 100 feet from a store selling the same commodities was struck down as arbitrary.
Unlike the ordinances struck down in Good Humor and Duchein, the present ordinances do not prohibit mobile vendor sales, nor do they arbitrarily exclude mobile vendors from business districts offering similar commodities. The downtown special assessment district of the City of Syracuse is the most heavily traveled area of the city in terms of pedestrian and vehicular traffic, according to the testimony of the Commissioner of Transportation and City Traffic Engineer, and the expertise of authorities having responsibility in these areas should be accorded great weight. (Duchein v Lindsay, supra.)
The court finds that Ordinances No. 29 and No. 30 merely regulate the time and place in which mobile vendors may park or stand for extended periods, and that these regulations are based on legitimate concerns of public safety and convenience.
With respect to the question of time restrictions, the court finds that the limitations imposed by the ordinances are not unreasonable. Ordinance No. 29, in effect, prohibits retail sales from any vehicle occupying a metered parking space or from any zone where parking, standing or stopping is prohibited. It further prohibits renewal of metered parking time by any vehicle by depositing extra coins in the meter. The city has the authority to regulate the use of metered parking areas to achieve what it feels to be in the public interest — in this *463 case, a turnover of metered parking spaces for the benefit of the general public. Such a regulation is not an invalid exercise of the police power.
Under Ordinance No. 30, a mobile vendor must vacate his stand after 60 minutes. If no other mobile vendor appears to take the space, the original vendor may retain the stand for an additional 60 minutes, but must then move on. The mobile vendor stands may be utilized only from the hours of 10:00 a.m. to 3:00 p.m.
In People v George (170 Misc 707, affd 280 NY 843) an ordinance prohibiting a vehicle from which the defendant was peddling to stand in one place for more than 10 minutes was upheld as constitutional. In Trio Distr. Corp. v City of Albany (2 NY2d 690), the court noted that an ordinance may prohibit an itinerant vendor from peddling in specified congested thoroughfares during rush hours.
The apparent purpose of the limitation provisions of the ordinances is to prevent undue interference with traffic, avoid undue congestion in the public streets and provide all mobile vendors with an opportunity to use the designated stands at some time. Again, it should be noted that ordinances are not directed specifically towards the plaintiff nor towards mobile restaurants, but rather are applied to mobile vendors as a general class, all of whom are treated alike in the privileges conferred and in the liabilities imposed.
As mentioned at the outset, the role of the court in a suit challenging the constitutionality of a validly enacted ordinance is a limited one. The necessity and advisibility of the ordinance is for the legislative power to determine, and the presumption is in favor of the constitutionality of the ordinance. The court may not sit as a super-legislature to weigh the wisdom of the legislation. Legislators have constitutional authority to experiment with new techniques and they are entitled to their own standard of the public welfare. (DayBrite Light, v Missouri, 342 US 421, 423.) The methods which the legislative body employs to carry out its purposes are beyond attack without a clear and convincing showing that there is no rational basis for the legislation — that it is an arbitrary fiat. (Carolene Prods. Co. v United States, 323 US 18, 31-32.)
Having reviewed the pleadings, the supporting papers, and the exhibits received into evidence, having heard the testimony of the witnesses and considered the arguments of re *464 spective counsel, the court finds that the plaintiff has not met his burden and has failed to overcome the presumption in favor of the constitutionality and validity of the ordinance. Accordingly, the preliminary injunction granted to the plaintiff is hereby terminated; General Ordinances Nos. 29 and 30 of 1978 amending the Traffic Code of the City of Syracuse are held to be constitutional, and plaintiff’s complaint is dismissed.