OPINION OF THE COURT
Elliott Wilk, J.
These two CPLR article 78 proceedings are consolidated for purposes of disposition.
Petitioners are vendors licensed to sell food on the streets of New York City (City). They seek to prevent respondents from limiting their access to various streets in New York, Bronx, Kings and Queens Counties.
Petitioners allege that Local Laws, 1983, No. 17 of City of New York and the amendments to Regulation 11 of the Department of Consumer Affairs (DCA) are arbitrary and capricious; *909 that the rule proscribing vending within 30 feet of restricted streets is arbitrary and capricious; and that respondents have failed to comply with State and local requirements by failing to prepare a timely environmental impact statement.
In 1977, the City Council passed Local Laws, 1977, No. 77 of City of New York, the first of a series of statutes designed to regulate the activities of street vendors.* Local Law No. 77 established the City’s comprehensive licensing scheme and imposed restrictions on the placement of vendors’ vehicles, pushcarts and stands. This legislation was upheld in Eagle v Koch (471 F Supp 175 [SDNY 1979]).
In 1983 the City Council found “that the presence of food vendors in certain parts of the city has caused serious congestion on the streets and sidewalks, preventing the regular flow of pedestrian and vehicular traffic, forcing pedestrians off the sidewalk, and thereby creating the increased potential for automobile and other vehicular accidents and posing an extremely serious threat to the health, safety, and well-being of residents of, and visitors to, the city * * * it is necessary to limit food vending in those parts of the city, and at those times, where such congestion has been found regularly to exist.” The Council voted, unanimously to enact Local Law No. 17, which among other things, prohibits food vending in designated areas during specified times. Local Law No. 17 also authorizes the Commissioner of Consumer Affairs to further restrict the activities of street vendors upon a finding that “the operation of any general vending business or food vending business * * * or both, on any streets, at any times, would constitute a serious and immediate threat to the health, safety and well-being of the public on the ground that such street at such time is regularly too congested by pedestrian or vehicular traffic to permit the operation of such business.”
In August 1983 DC A held hearings on proposed amendments to Regulation 11, which expands the number of streets deemed off limits to the vendors.
In addition, the “thirty-foot rule” of the amendments prohibits vending in “an area of each street that crosses each designated street; this area is thirty feet of street and sidewalk in each direction, measured from the building lines closest to each designated street or each cross street corner.”
*910 The Commissioner adopted amendments to Regulation 11, effective November 15, 1983. Petitioners then commenced an article 78 proceeding, alleging that respondents failed to give them proper notice of the hearing and an opportunity to comment on the proposed amendments.
Prior to the court’s ruling, the City consented to hold additional hearings as to which designated streets and times the amendments were to apply. After appropriate notice was provided, the hearings were held in February 1984 and evidence was presented by numerous individuals and groups, among the many of these petitioners and their counsel. Th^ Commissioner then adopted amended Regulation 11, effective July 15, 1984.
Petitioners claim that the evidence presented to the City Council and DC A .was insufficient to justify the conclusion that the relationship between food vendors, congestion and public safety warranted the enactment of Local Law No. 17 and Regulation 11, as amended.
Petitioners suggest that respondents must demonstrate that the presence of licensed food vendors in the designated areas adds to congestion. I disagree. Local Laws, 1983, No. 17 of City of New York § 17 states that “[t]he Commissioner shall make a determination, after holding a public hearing, whether the operation of any general vending business or food vending business * * * or both, on any streets, at any times, would constitute a serious and immediate threat to the health, safety and well-being of the public on the ground that such street at such time is regularly too congested by pedestrian or vehicular traffic” (emphasis added).
The City Council has concluded that the presence of food vendors may pose a health and safety hazard to an already congested street. Although reasonable people may disagree, there is ample support in the record for such a conclusion, and it is consistent with the municipality’s mandate to promote and preserve the public welfare. Thus, the Commissioner need not determine that food vendors contribute to existing congestion, but only that the combination represents a threat to public health and safety.
Legislative enactments in furtherance of the police power of a municipality are presumed to be constitutional and are judicially unassailable if they are not arbitrary and bear a rational relationship to the end sought to be achieved. (Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370 [1978]; Health Ins. Assn. v Harnett, 44 NY2d 302, 310 [1978].) Thus, whether the legislation is the most efficacious means of achieving the *911 desired goal is not for the court to consider. (Health Ins. Assn. v Harnett, 44 NY2d, at p 312.)
The choice of means is within the legislative prerogative, and its wisdom in exercising its authority, absent an unconstitutional selection, should not be subject to judicial review. (Oriental Blvd. v Heller, 27 NY2d 212, 219 [1970], appeal dismissed 401 US 986 [1971].) A showing of economic hardship will not defeat a statute enacted under the police power. That the statute or regulation imposes pecuniary costs or even makes it impossible for some to continue in business does not render it invalid. (See, Breard v Alexandria, 341 US 622, 632-633 [1951]; Bryant Westchester Realty Corp. v Board of Health, 91 Misc 2d 56, 59 [Sup Ct, NY County 1977].)
Petitioners’ complaint that the Council’s investigation of the relationship between food vendors, congestion and public safety was insufficiently rigorous is equally unavailing. The fact that there may exist more scientific methods than those employed upon which legislative decisions are based does not, by itself, render those judgments arbitrary or capricious. (See, e.g., Lincoln Bldg. Assoc. v Barr, 1 NY2d 413, 415-416 [1956], appeal dismissed 355 US 12 [1957].)
Respondents’ administrative findings are also challenged as being unsupported by the testimony taken at the February 1984 public hearings. Judicial review of an administrative determination is limited to considering whether it is supported by substantial evidence, within the jurisdiction of the administrative body, consistent with lawful procedure, not arbitrary and a reasonable exercise of discretion. (Matter of Pell v Board of Educ., 34 NY2d 222 [1974].) Respondents’ documentary evidence refutes petitioners’ allegations that Regulation 11, as amended, is arbitrary and capricious. There is nothing to suggest that the amendments are without sound basis in reason or adopted without due regard for the facts. 9See, Matter of Pell v Board of Educ., supra.)
I am also satisfied that the Commissioner’s factual determinations with respect to the designated streets were based on substantial evidence. Examination of the record reveals that the views of both sides were elicited and carefully considered. In many instances, respondent’s hearing officer engaged in extensive questioning concerning the need for the restrictions in a given area. Contrary to petitioners’ assertions, DCA (or its hearing officer) need not separately state the grounds for its findings as to particular streets, as long as the findings are sufficiently specific so that a court may conduct an intelligent *912 review. (See, Mor Bar & Grill v O’Connell, 277 App Div 847 [1st Dept 1950].)
I agree with petitioner that the record does not support the application of the “thirty-foot rule” to the streets designated in amended Regulation 11. As respondents submit, DC A may attempt to define the restricted areas to include portions of the cross streets to prevent the clustering of vendors and pedestrians at the intersections. However, there must be a basis in the record for the application of the 30-foot extension to the designated streets. The only testimony relating to the “thirty-foot rule” was offered on behalf of the vendors. Respondents made no effort to justify the rule’s application by the introduction of evidence concerning the traffic at the designated cross streets or in any other manner. Accordingly, I find that the agency determination, insofar as it. holds the application of the “thirty-foot rule” to the streets designated in Regulation 11, as amended, is unsupported by substantial evidence and must be set aside.
Petitioners also contend that Local Law No. 17 and Regulation 11, as amended, are unenforceable because of respondents’ failure to prepare and file an environmental impact statement (EIS) as required by City and State law.
The New York State Environmental Quality Review Act (SEQRA; ECL 8-0101 et seq.) requires that an EIS be prepared for any “action” which may have a significant effect on the environment. (See, ECL 8-0101 et seq.) By Mayor’s Executive Order No. 91 of 1977, the City adopted environmental quality review procedures (CEQR) as mandated by SEQRA. Under CEQR, the City’s Department’s of City Planning and Environmental Protection are designated the “Co-lead” agencies to evaluate whether an “action” may have a significant effect on the environment, and require an EIS. According to respondents, in making this determination, the colead agencies consider such factors as the impact of the action on the surrounding community, population density, transportation, traffic flow, air, noise, water and infrastructure.
SEQRA broadly defines “action” as an agency project, action or regulation. (See, ECL 8-0105 [4]; see also, CEQR § 4.) However, the State statute exempts some types of administrative actions from environmental review (see, ECL 8-0105 [5]) while others are deemed exempt under State regulations and CEQR. (See, 6 NYCRR 617.13; CEQR § 5.) Respondents maintain that the challenged amendments to Regulation 11 fall within the latter category (termed “Type II” actions) as “routine or continuing agency administration and management, not including new *913 programs or major reordering of priorities” (6 NYCRR 617.13 [d] [15]). Since Local Law No. 77 was enacted, street vendors have been subject to restrictions identical in character and effect to those contemplated by amended Regulation 11. Therefore, respondents urge, the challenged amendments are merely part of the City’s continuing management of vending activity and do not require preparation of an EIS.
These arguments, substantiated by the affidavits of the Director of the Environmental Management Division of the Department of City Planning and the Director of the Office of Environmental Impact of the Department of Environmental Protection, have persuaded me that the promulgation of amended Regulation 11 is a Type II action not requiring an EIS.
Petitioners’ challenge to Local Law No. 17 on the same grounds is barred by the Statute of Limitations. (See, CPLR 217; Lai Chun Chan Jin v Board of Estimate, 101 AD2d 97 [1st Dept 1984].)
The petitions are dismissed except for the “thirty-foot rule,” as to which judgments shall be entered in favor of petitioners.

 NY Constitution, article IX, § 2 (c) (ii) (10), Municipal Home Rule Law, article 2, § 10 (1) (ii) (a) (12) and New York City Charter § 27 empower the New York City Council to regulate the use of the City streets to preserve and promote the health, safety and general welfare of the public. (See, Good Humor Corp. v City of New York, 290 NY 312 [1943].)