OPINION OF THE COURT
Norman C. Ryp, J.
A. ISSUE
Whether municipal food vendors have a property and/or *430 constitutional right, subject to full procedural due process, to renewal by the New York City (NYC) Department of Health (D/H) of vendor permits or licenses without clearance (by full payment of statutory penalties or dismissal) by the NYC Environment Control Board (ECB) of class A violations of the New York City Health Code (arts 81, 89) and Administrative Code of the City of New York (§§ D22-1.0 — D22-20.0, now §§ 17-306 — 17-326). A biting issue of first impression!
Petitioners, food vendors, and all others similarly situated (under CPLR art 78 and 42 USC § 1983) petition and move, under CPLR 6311, for a preliminary injunction to enjoin respondents from enforcing a policy whereby license renewals are denied or withheld because of defaulted notice of violations (NOV) before the NYC-ECB, is denied.
B. FACTS AND PROCEDURAL HISTORY
Petitioners, Ibrahim Khalil, Michael Vajda, Kiriakos Kiriakidis, Mohammed Maqsood, and Juanita Muniz, were duly licensed food vendors, pursuant to New York City Health Code § 89.03, whose licenses expired on January 31, 1988, extended to February 29, 1988 by the NYC-D/H. Petitioner William Micelli’s license expired in January 1986. All other petitioners, except Mr. Micelli, have submitted license renewal applications to NYC-D/H.
None of the renewal applicants deny receipt of a letter from NYC-D/H in October 1987, nor being alert that their licenses expired on the above dates, subject to renewal and further stating that, "note: any unpaid ecb class 'a’ VIOLATIONS WILL PREVENT RENEWAL OF YOUR LICENSE.”
. It is undisputed that petitioners were personally served with NOVs charging them with serious health violations, otherwise known as class A violations.
Thereafter, respondents did not renew petitioners’ licenses because petitioners have outstanding class A violations pending before the ECB. Upon information and belief, all petitioners have since received expedited walk-in hearings and now have their renewal licenses. Threfore, it is important to note that the "outstanding summonses” holding up petitioners’ license renewals are for the period from February 1, 1986 to December 31, 1987, defaulted upon summonses, not newly issued summonses thereafter.
*431 C. PARTIES’ CONTENTIONS
Petitioners contend that: (1) petitioners have a property right in their expired licenses; (2) the challenged policy, because it does not provide for a license renewal hearing procedure prenonrenewal, violates their due process rights; (3) the challenged policy penalizes petitioners, and others similarly situated, for exercising their due process right to a hearing and therefore should be struck down; and (4) that petitioners are entitled to reduced fines as per stipulation entered into in a prior CPLR article 78 proceeding.
Respondents contend (1) petitioners have not been deprived due process of law since they do not have property rights in a renewal license; (2) it is reasonable to require petitioners to show compliance with the relevant health and safety laws prior to granting them a license; and (3) it is due to petitioners’ knowing defaults that they cannot show such compliance, and that they were given the opportunity to comply in a timely fashion prerenewal dates.
D. LAW AND APPLICATION
1. Substantive due process and food vendor license renewal requirement to clear all prior class A violations
One of the most vital legislative purposes, State and local, is to enact measures to promote public health and safety under the police powers. (NY Const, art III, § 1; art IX, § 2; Municipal Home Rule Law § 10 [1] [a] [12]; Wiggins v Town of Somers, 4 NY2d 215 [1958].) Petitioners seek herein to thwart the exercise of that police power by attempting to obtain renewal of their mobile food vendor’s licenses despite serious alleged class A health violations. Such include handling food with dirty hands, improper storages of garbage and perishable foods. Thus, in order to protect and promote the general public health and safety, it appears to be a reasonable exercise of the police power for respondents to require petitioners to comply with relevant health and safety laws and codes, including reasonable rules and regulations promulgated thereunder before a mobile food vendor’s license renewal is granted. This is especially so when petitioners can pay the fines to clear and remove such serious class A violations, without prejudice to later contesting same. A similar procedure is followed in the renewal of New York State motor vehicle licenses, which constitutionality has not been successfully challenged (see, Vehicle and Traffic Law §§ 502, 516).
*432 Thus, this court finds, in fact and law that subject NYC-ECB clearance, as required, is reasonable and constitutional exercise of New York State’s, as properly delegated to New York City (see, Municipal Home Rule Law § 10 [1] [a] [12]), police power.
2. Property right to and procedural due process for food vendor license renewal
In the case at bar, contrary to petitioners’ contentions, petitioners have not been denied a property right, since under New York State law an application for a renewal (license) is to be regarded in exactly the same manner as an " 'application for a new license’ ”. (See, Matter of Wager v State Liq. Auth., 4 NY2d 465, 468 [1958], quoting Matter of Restaurants & Patisseries Longchamps v O'Connell, 271 App Div 684, 686 [1st Dept 1947], affd 296 NY 888 [1947].) Therefore, the court’s role herein is limited to determining whether or not respondents’ actions were unreasonable, i.e., arbitrary or capricious under the circumstances. (See, Matter of Wager, supra, at 468.)
This court finds that respondents did not abuse their discretionary powers in denying petitioners’ renewal applications. In each individual case petitioners had prior ample notice and a reasonable opportunity to answer and oppose (with procedural due process rights, including a hearing) their respective health violation summonses, and/or pay their fines after defaulting on said violations.
Three of the cases cited (see, Bell v Burson, 402 US 535, 539 [1971]; Wells Fargo Armored Serv. Corp. v Georgia Pub. Serv. Commn. 547 F2d 938, 941 [5th Cir 1977]; Village of Southhampton v Tekworth, 69 Misc 2d 291, 292-293 [Spec Term, Suffolk County 1972]) by petitioners to support their "property rights” argument are distinguishable from the case at bar. In each of these three cited cases, the licenses, privileges, certificates and franchises were prematurely terminated, revoked and/or suspended, whereas herein, petitioners’ license terms expired and were denied renewal licenses in which they had no property rights themselves point to this distinction applicable to all three cases, in the cited language from Bell v Burson (supra, at 539), which reads: "Once licenses are issued, as in petitioner’s case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees.” (Emphasis added.)
*433 In addition, the other cases cited by petitioners to support their contentions, they, too, are distinguishable from the case at bar:
(a) Although it deals with a license renewal situation, Trumbull Div., Owens-Corning Fiberglass Corp. v City of Minneapolis (445 F Supp 911 [Minn, 4th Div 1978]) differs from the case at bar in that therein the court was dealing with a licensee who was in the asphalt business, a high overhead business (i.e., factories) for over 25 years and as the court explained: "Plaintiff here has more than a mere expectancy or abstract hope of license renewal; it has a legitimate claim * * * to its license. The investment necessary to carry on an asphalt manufacturing business could not be made unless there were an understanding that operations could continue from year to year. A shut-down of the plant would cause plaintiff a grievous loss.’ ” (See, Trumbull Div., Owens-Corning Fiberglass Corp., supra, at 916.) In addition, in Trumbull Div., Owens-Corning Fiberglass Corp., plaintiff was not given a formal statement of reasons for the city’s refusal to renew its license. (See, supra, at 916.) Here, petitioners, despite their contention that "[t]he enormous effect and hardship such a policy places on food vendors is clear”, have not shown this court that they had "more than a mere expectancy or abstract hope of license renewal”, in fact, unlike the plaintiff in Trumbull, they were well aware of the steps necessary to secure renewal of their respective licenses.
(b) The case of Stypmann v City & County of San Francisco (557 F2d 1338 [9th Cir 1977]) is inapplicable herein since it deals with the ownership of private property and the deprivation thereof.
(c) Petitioners also argue that because the renewal procedures do not provide for a prenonrenewal hearing, that their due process rights were violated. Assuming, arguendo, that petitioners had a property right in renewal licenses, this argument is meritless, since petitioners, through the powers allotted the Environmental Control Board in section 1404 (d) et seq. of the New York City Charter, are provided prior notice and reasonable opportunities to be heard consistent with all procedural due process requirements via NOVs. These opportunities are: (1) a hearing date is indicated on the NOV, which is scheduled approximately 30 days from the date of violation, so that the issuing officer can attend the hearing and give testimony, and to allow for cross-examination of said officer; *434 (2) the NOV states that a "walk-in” hearing may be obtained prior to the hearing date; and (3) that a defense to a NOV may be interposed by mail.
The New York City Charter itself provides that a "failure to plead in the manner and time stated in the [NOV] may result in a default decision and order being entered” against the person served. (See, NY City Charter § 1404 [d] [1] [c].) The New York City Charter further provides "such failure to, plead or appear shall be deemed, for all purposes, to be an admission of liability and shall be grounds for rendering a default decision and order imposing a penalty in the maximum amount prescribed under law for the violation charged.” (See, NY City Charter § 1404 [d] [1] [d].)
In accordance with the New York City Charter and undisputed by petitioners is personal service with NOVs which clearly set forth the above procedural due process opportunities. By choosing to default at their original hearing dates and failing and/or refusing to exercise their other options available for answering these summonses, the petitioners admitted liability, pursuant to New York City Charter § 1404 (d) (1) (c). As respondents argue, the fact that, after the expiration of their food vendor licenses, petitioners awoke and then sought and received stays of these default orders, does not negate the fact that they were afforded procedural due process in the first place.
Inapposite to petitioners’ contention that "[s]hould they wish to contest a summons which they perceive to be untrue, defective or invalid, they can go to a hearing and raise such claims, but cannot work in the meantime because their licenses will not be renewed,” is the fact that petitioners had ample time to clear up their defaults before the renewal period and are not required, for the current renewal period, to clear violations that postdate December 31,1987.
3. The Iliopolous stipulation and its applicability herein.
The Iliopolous stipulation effective from January 31, 1986 until April 30, 1986, arose from prior license renewal periods.
The two Iliopolous representations in question herein are: (1) that renewal applicants for food vendor licenses need only pay their outstanding serious class A health violations prior to receiving clearances from ECB, and that less serious violations (also known as B violations) still must be paid, but do not bar renewal licenses; and (2) that a reduced fine schedule is applicable to all A violations.
*435 There appears to be no dispute as to representation number (1) above, since respondents are currently applying said guideline to renewal applicants.
This court finds after a thorough reading of said stipulation, and the papers submitted by all parties, that representation number (2) above was intended to apply to the renewal period for food vending licenses or permits expiring on January 31, 1986. However, the respondent, ECB, has voluntarily interpreted said stipulation to extend to the 1988 license renewal period, but only for those violations which occurred after January 31, 1984 but on or before January 31, 1986.
E. CONCLUSION
The petitioners have no property right in the renewal of their food vendor licenses, whose law, code, rules and regulations are constitutionally reasonable and because such renewal application^) are treated in the same manner as an application for a new license. Therefore, the respondents did not abuse their discretionary powers in denying petitioners’ renewal applications because the petitioners were given ample opportunity to answer or oppose the NOVs which blocked their renewals before their licenses expired but instead waited until after their licenses had expired before challenging the NOVs.
Finally, all outstanding fines that were paid without prejudice are subject to the reduced fine schedule as per the Iliopolous stipulation, as long as the violations occurred between January 31, 1984 and January 31,1986.
Accordingly, for the foregoing reasons plaintiff’s motion, under CPLR 6311, for a preliminary injunction is denied and their petition for permanent injunctive relief and damages, under CPLR article 78 and 42 USC § 1983 is dismissed.