[600 NYS2d 177]

MEDICAL SOCIETY OF THE STATE OF NEW YORK et al., Respondents, v THOMAS SOBOL, as Commissioner of the Department of Education, et al., Appellants.

Third Department, July 8, 1993

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General,* Albany *(Daniel Smirlock* and *Peter H. Schiff* of counsel), for appellants.

*LeBoeuf, Lamb, Leiby & MacRae,* New York City *(Jay G. Safer, Stephen H. Orel* and *Donald R. Moy* of counsel), for respondents.

## OPINION OF THE COURT

WEISS, P. J.

The question presented on this appeal is whether legislation (L 1990, ch 190, §§ 278, 280) which reduced the period of physicians' registration (Education Law § 6524 [8]; 8 NYCRR 59.8) by one year and concomitantly increased the registration fee from $240 to $330 violates the Contract Clause of the US Constitution, takes physicians' property without compensation and denies physicians their right to due process. In the underlying action challenging the constitutionality of that portion of the legislation which terminated the third year of

the triennial registration scheduled to end December 31, 1991, Supreme Court granted plaintiffs' motion for summary judgment, finding that the statute effected an unconstitutional impairment of contract rights between physicians and the State and a taking of their property (153 Misc 2d 815). This appeal by defendants ensued.

The inquiry as to whether a statute unconstitutionally* impairs a contract (US Const, art I, § 10) posits three components: (1) whether there is a contractual relationship, (2) whether a change in law impairs that contractual relationship, and (3) whether the impairment is substantial *(see, General Motors Corp. v Romein,* 503 US —, 112 S Ct 1105). Here, plaintiffs contend that a statute (Education Law § 6524 [8]), with its implementation by regulation (8 NYCRR 59.8), created the contract now alleged to be statutorily impaired. It is black letter law that absent some clear indication that the Legislature intends to bind the State contractually, a statute is presumed not to create private contractual or vested rights, but merely to declare a policy to be pursued until the Legislature shall ordain otherwise *(Dodge v Board of Educ.,* 302 US 74, 79). This strong presumption is based upon the premise that the Legislature's principal function is to make laws to establish the policy of the State and not to make contracts, and that policies, quite unlike contracts, are inherently subject to revision and repeal *(National R. R. Passenger Corp. v Atchison, Topeka & Santa Fe Ry. Co.,* 470 US 451, 466). The party asserting the creation of a contract must overcome this presumption *(supra)* and it is well settled that before a law may be deemed to be a contract between the State and a third party (in this instance many thousands of individual physicians), examination of the statutory language must show it to be plain and susceptible of no other reasonable construction than that a contract was intended *(see, Pennsylvania R. R. Co. v State of New York,* 11 NY2d 504, 511). The Court of Appeals in *Pennsylvania R. R. Co. v State of New York (supra)* stated: " 'It is never to be assumed,' this court has said, 'that the State has * * * fettered its power in the future, except upon clear and irresistible evidence that the engagement was in the nature of a private contract, as distinguished from a mere act

* "That a legislative enactment will be presumed constitutional is an elementary but significant principle of law. * * * 'While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt' " *(Marcus Assocs. v Town of Huntington,* 45 NY2d 501, 505 [citations omitted]).

of general legislation; and that such, in the particular instance, was the actual and deliberate intention of the State authorities' " *(supra,* at 511, quoting *People ex rel. Cunningham v Roper,* 35 NY 629, 633).

Before a statute will be deemed to be a contract, its language and circumstances must "manifest a legislative intent to create private rights of a contractual nature enforceable against the State" *(Cook v City of Binghamton,* 48 NY2d 323, 330). The initial question, then, is whether the Legislature, in passing Education Law § 6524 (8) (L 1971, ch 987, § 2) and the amendments thereto (L 1976, ch 77, § 5; L 1982, ch 55, § 48; L 1987, ch 43, § 6), intended to create private rights of a contractual nature enforceable against the State *(see, Association of Surrogates & Supreme Ct. Reporters v State of New York,* 79 NY2d 39, 45). We find that it did not.

■ The practice of medicine within the State, as a matter of public policy, is comprehensively and pervasively regulated. The challenged fee structure is merely one measure of governing the conduct of this heavily regulated business. The statutes in question are clearly general in scope based upon public policy considerations and cannot be interpreted to manifest a legislative intent to create private rights of a contractual nature enforceable against the State *(see, Cook v City of Binghamton, supra,* at 330-331). Within these criteria plaintiffs have failed to meet their burden of establishing the unconstitutionality of the statute (L 1990, ch 190, § 280) which, in essence, merely increased the registration fee involved *(see, supra,* at 330; *see also, Medical Malpractice Ins. Assn. v Cuomo,* 74 NY2d 651, 653).

■ Defendants also contend that Supreme Court erred in determining that the Laws of 1990 (ch 190, § 280) effected an unconstitutional taking of a physician's property by changing the termination date of those physician registrations issued in 1989. The claimed property is the term of the registration, which itself is part of the State regulatory scheme governing the practice of medicine. Beyond peradventure, a medical license is a valuable property right *(see, Matter of Doe v Axelrod,* 123 AD2d 21, 26, *revd on other grounds* 71 NY2d 484). But while a valid registration is necessary to use a medical license, it is ministerial and financial in nature. We find that there is no property right in the duration of the registration. To the extent the Laws of 1990 (ch 190, § 280) affects the underlying medical licenses, it effects no taking.

■ The 5th Amendment of the US Constitution " '[is] designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole' " *(Penn Cent. Transp. Co. v New York City,* 438 US 104, 123, quoting *Armstrong v United States,* 364 US 40, 49). There is no set formula to determine if a taking has occurred *(supra,* 438 US, at 124). The principal factors of particular significance, to be considered on an ad hoc basis, are (1) the economic impact of the regulations on the party claiming a taking, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action *(Connolly v Pension Benefit Guar. Corp.,* 475 US 211, 225). Another factor, not relevant here, is whether the taking amounts to a permanent physical occupation of property *(see, Loretto v Teleprompter Manhattan CATV Corp.,* 458 US 419, 432). In our consideration of factors as they affect the instant case, we particularly note the limited financial impact on the over-all practice of medicine. That economic impact, together with the de minimis effort involved in the reregistration process, has, at best, only a remote effect upon, or interference with, the ability of doctors to fully utilize their medical licenses. The revenue gained is used in policing the quality of medical care within the State, the heavily regulated business interest from which the revenue is raised. In sum, we conclude that no unconstitutional taking has occurred.

■ As a final note, we reject the argument that procedural or substantive due process violations occurred from the lack of individualized notice of the change to each physician, and notice of the right to hearings regarding the changes in the registration fee and time periods. The Legislature need only enact and publish laws and afford the public a reasonable opportunity within which to become familiar with its terms and to comply therewith *(see, Texaco, Inc. v Short,* 454 US 516, 532).

MERCURE, MAHONEY and CASEY, JJ., concur.

Ordered that the order and judgment is reversed, on the law, with costs, plaintiffs' motion denied, defendants' motion granted, summary judgment awarded to defendants and it is declared that the Laws of 1990 (ch 190, § 280) have not been shown to be unconstitutional.