OPINION OF THE COURT
Louis B. York, J.
This is an action by plaintiffs Big Apple Food Vendors’ Association et al, representing holders of multiple permits issued by defendant Department of Health (DOH) authorizing the vending of food from sidewalk carts and vehicles on public *486 space. Plaintiffs challenge the constitutionality of those portions of Local Laws, 1995, No. 15 of City of New York (Local Law 15) which prohibit current permit holders from renewing more than one such permit and designate 200 of the unissued full-term permits for use exclusively in boroughs other than Manhattan. Plaintiffs argue that Local Law 15 is unconstitutional because it violates their rights to Due Process and the Takings and Equal Protection Clauses and is vague. Plaintiffs also seek a preliminary injunction compelling defendants to issue any remaining mobile food vending permits without regard to the multiple permit restriction or the outer borough restriction. Defendants cross-move to dismiss the complaint and argue that Local Law 15 makes permits available to a broader spectrum of individuals and entities and decreases the likelihood and ability of permit holders to illegally lease permits and/or charge excessive fees for the use of carts.
DOH is empowered to supervise and regulate the public health aspects of the City’s food supply and other businesses and activities affecting public health in the City under section 556 (q) of the New York City Charter. Individuals who wish to act as food vendors within the City must obtain authorization from the Commissioner of DOH. (Administrative Code of City of NY, tit 17, ch 3, subch [2].) Mobile food vendors who operate on public space must be licensed and must also obtain permits for their vehicles or pushcarts. (Administrative Code § 17-307 [a] [1]; [b] [1].) Permits are designated as either full term or temporary and must be renewed every two years.
Traditionally, there was no limit on the number of permits a particular vendor could obtain or renew and DOH was not required to maintain a waiting list. There was also no geographical restriction on where permits could be used. However, as of July 30, 1983, the number of full-time permits that DOH was authorized to issue was limited to 3,000, and the number of temporary permits was limited to 1,000. (Administrative Code § 17-307 [b] [2] [a]; [¶] [3] [a].) This limit does not apply to vendors who are concessionnaires of the Department of Parks and Recreation or to restaurants and vendors who operate on private space.
Local Law 15, which was passed by the City Council on January 19, 1995 and signed by the Mayor on February 3, 1995, amended title 17 to prohibit the issuance of more than one permit, whether full term or temporary, to any person. (Administrative Code § 17-307 [b] [2] [c].) Title 17 now also compels the Commissioner to establish waiting lists which are *487 to be administered in accordance with procedures to be established by rules of the Commissioner. (Administrative Code § 17-307 [b] [2] [b] [ii]; [e]; [fj [3] [d].) The new law also designates 200 of the 3,000 full-time permits for use exclusively in the four boroughs outside of Manhattan, 50 for each borough. (Administrative Code § 17-307 [b] [2] [b].) Finally, Local Law 15 states that mobile food vending permits shall be issued only to persons who at the time of the application have not had a permit revoked or suspended and who satisfy the Commissioner that they are fit and able to conduct, maintain or operate a food vending business. (Administrative Code § 17-307 [b] [2] [cj; [¶] [3] [b].)
Plaintiffs assert that enforcement of Local Law 15 will have disastrous and crippling effects on the food vending industry. They contend that permit holders have relied on their ability to hold and renew multiple permits and have invested substantial sums of money to develop their businesses. Plaintiffs allege that Local Law 15 is the latest in a series of laws and regulations designed to harass and restrict their pursuit of their occupation. They contend that three years ago the number of permits issued had fallen below the cap which was established in 1983 and that defendants have unjustifiably refused to issue the remaining permits. Plaintiffs believe that enforcement of Local Law 15 as well as other restrictions on vending are a "thinly disguised attempt by the defendants to drive as many food vendors as possible out of business and destroy the industry as it has existed for many years.” (Plaintiffs’ mem of law, at 9.)
Defendants contend that Local Law 15 was enacted for the purpose of, among other things, making permits available to a broader spectrum of individuals and entities, as well as to decrease the likelihood and ability of permit holders to illegally lease permits and/or charge excessive fees for the use of carts. Defendants note that the permits are concentrated in a small number of owners and are primarily used in Manhattan. Defendants assert that over half of the existing food vendor permits are held by 58 corporations; 986 of the 3,000 permits are held by eight corporations, and three corporations controlled by one individual hold 499 permits. Defendants argue that the prohibition of multiple permit holding, and the establishment of 200 borough-specific permits are reasonably designed to achieve the goals stated above.
Plaintiffs’ first argument is that Local Law 15’s prohibition on holding multiple permits is arbitrary and capricious and *488 not rationally related to a legitimate government purpose. Plaintiffs argue that if defendants’ true aim was to encourage entry into this industry, they would issue any remaining licenses or eliminate the cap which was imposed in 1983.
The New York City Council is vested with "broad power to regulate the use of the city streets and to provide by local law for the good government of the city and the preservation and promotion of the health, safety and general welfare of its inhabitants.” (Good Humor Corp. v City of New York, 290 NY 312, 317; NY Const, art IX, § 2 [c] [10]; Municipal Home Rule Law § 10 [1] [ii] [a] [12]; NY City Charter § 28 [a].) Accordingly, "[l]egislative enactments in furtherance of the police power of a municipality are presumed to be constitutional and are judicially unassailable if they are not arbitrary and bear a rational relationship to the end sought to be achieved.” (Huggins v City of New York, 126 Misc 2d 908, 910; see also, Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370; Barr v City of Syracuse, 97 Misc 2d 453, 457; Collis v Town of Niskayuna, 178 AD2d 868.) The presumption can only be upset by proof beyond a reasonable doubt. (Brady v State of New York, 80 NY2d 596, 602; Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d, at 370, supra.) There is a further presumption that the Legislature has investigated and found facts necessary to support the legislation as well as the existence of a situation showing or indicating its need or desirability. (Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d, at 370, supra.)
Here, defendants have demonstrated a legitimate end to be achieved, i.e., "enabling a broader spectrum of individuals and entities to obtain mobile food vendor permits and in preventing illegal trafficking in this City-conferred privilege.” (Defendants’ mem of law, at 15.) Furthermore, the prohibition on multiple permits is rationally related to that interest since it prevents individuals or corporations from perpetually monopolizing permits to the exclusion of other interested parties and prevents such permit holders from charging excessive fees to those who are forced to lease the carts from them. Defendants have submitted evidence which indicates that permit holders have been willing to lease carts for as much as $9,000 while only paying $100 for the registration fee. Defendants also point out that such monopolies may exclude individuals from entering the industry and also allows the permit holders, rather than DOH, to determine who will be able to use the permits which are issued. Finally, Local Law 15 *489 does not preclude plaintiffs from continuing to sell or lease mobile food vending carts or other vehicles. It merely says that such sale or lease may not include the permit for the vehicle.
Plaintiffs may well be correct in asserting that they have invested substantial amounts of time and money in developing their businesses and that the prohibition on holding multiple permits will effectively put some of them out of business because they rely on operating a fleet of carts rather than just one cart. However, "[w]hether the legislation is the most efficacious means of achieving the desired goal is not for the court to consider”. (Huggins v City of New York, supra, 126 Misc 2d, at 910-911; Health Ins. Assn. v Harnett, 44 NY2d 302, 312.) Indeed, even the fact that the regulation renders it impossible for some individuals to continue in the business does not render it invalid. (Huggins v City of New York, supra, 126 Misc 2d, at 911.)
The court also rejects plaintiffs’ argument that the proper means to this end would be to remove the cap on the number of permits which may be issued. It is the City which is empowered to make such a decision and the City has determined that such a cap is appropriate in order to protect the flow of pedestrian and vehicular traffic on busy and congested streets from the risk of accidents engendered by the placement and sale of food on public space, which was found to exacerbate congestion and force pedestrians off the sidewalks. (See, Huggins v City of New York, supra, 126 Misc 2d, at 910.) Moreover, the constitutionality of the cap has already been upheld in Short Stop Indus. Catering Corp. v City of New York (127 Misc 2d 363). Thus, plaintiffs’ argument that the City should eliminate the cap is unavailing.
Plaintiffs further contend that Local Law 15’s multiple permit restriction violates their due process rights in that it deprives them of a constitutionally protected property right. Plaintiffs argue that the standard for renewing food vending permits has always been lenient and that in reliance on such a standard, permit holders have invested substantial amounts of time and money in developing their businesses and this has led to the creation of a constitutionally protected property right which the City cannot alter without cause.
The essence of due process of law is fundamental fairness. (Matter of Economico v Village of Pelham, 50 NY2d 120, 124-125.) *490 * "It demands that the government treat all justly by granting to the individual against whom governmental decisions operate the right to be heard.” (Supra.) In order to state a due process claim, a plaintiff must show that it has been deprived of a liberty or property interest which is created or recognized by State law. (Supra; Board of Regents v Roth, 408 US 564, 577; Story v Green, 978 F2d 60, 62.) As the United States Supreme Court noted "To have a property interest in a benefit, a person clearly must have more than an abstract need for it. He [or she] must have more than a unilateral expectation of it. He [or she] must, instead, have a legitimate claim of entitlement to it.” (408 US 564, 577, supra.)
Plaintiffs have not shown that such a property interest has been created here. Generally, a license is subject to reasonable restrictions and to revocation by an issuing authority. (Matter of Lap v Axelrod, 95 AD2d 457, 459.) The State may change the right to hold a license which it has granted or the conditions under which it may be held because it is not a vested right. (Supra; Matter of Guddemi v Rozzi, 210 AD2d 479; Story v Green, 978 F2d 60, 62, supra.) Moreover, an application for a renewal license is to be regarded in exactly the same manner as an application for a new license. (Khalil v Spencer, 143 Misc 2d 429.)
Due process may prevent the revocation of a license without a hearing. (See, e.g., Matter of Saumell v New York Racing Assn., 58 NY2d 231; Matter of Wrona v Donovan, 88 AD2d 998; Medical Socy. v Sobol, 192 AD2d 78.) However, it does not guarantee that a license or permit may be held in perpetuity and plaintiffs have not pointed to any authority which holds that a property right exists in holding multiple vending permits such as would prevent the City from ever declining to renew them.
Even if plaintiffs did have a property right in holding multiple permits, they have not demonstrated that Local Law 15 deprives them of that right in violation of due process. Plaintiffs argue that Local Law 15 must be examined under the strict scrutiny test which is invoked when a statute infringes on a fundamental liberty such as the right to pursue one’s occupation. However, it is well settled that the City is vested with "broad power to regulate the use of the city streets and to provide by local law for the good government of the city *491 and. the preservation and promotion of the health, safety and general welfare of its inhabitants.” (Good Humor Corp. v City of New York, supra, 290 NY, at 317.) Accordingly, the City may enact laws which are reasonably calculated to achieve a legitimate public purpose. (Supra.) Thus, strict scrutiny is not warranted. Instead, the test is whether the governmental decision affecting the property has been made in an arbitrary and capricious manner and without any rational basis. (Town of Orangetown v Magee, 215 AD2d 469; Story v Green, 978 F2d 60, 62, supra.) As seen above, it is well established that legislative acts enjoy a presumption of constitutionality. (Brady v State of New York, 80 NY2d 596, 602, supra.) While the presumption is rebuttable, "the heavy burden of establishing the contrary beyond a reasonable doubt rests upon the challenger.” (Matter of Klein [Hartnett], 78 NY2d 662, 666, cert denied 504 US 912 [1992].)
Local Law 15 does not prohibit plaintiffs from engaging in the mobile food vending business. It merely restricts the number of permits that each vendor may hold. The purpose of this restriction is to prevent one or more permit holders from monopolizing the existing permits and charging exorbitant sums to others who lease carts from them. Defendants have submitted evidence which indicates that permit holders have been willing to lease carts for as much as $9,000 while paying only a $100 fee for each year of the permit’s registration. Defendants also point out that such monopolies may exclude individuals from entering the industry and also allows the permit holders, rather than DOH, to determine who will be able to use the permits which are issued. Again, Local Law 15 does not preclude plaintiffs from continuing to sell or lease mobile food vending carts or other vehicles. It merely says that such sale or lease may not include the permit for the vehicle.
Again, plaintiffs may be correct that some of them will no longer be able to carry on their businesses as they have in the past. However, the fact that the regulation renders it impossible for some individuals to continue in the business does not render it invalid. (Huggins v City of New York, supra, 126 Misc 2d, at 911.) It was the City that allowed vendors to accumulate multiple permits. "Having enacted a statute that created such a right, however, the legislature retains the power to enact new legislation altering or eliminating the right, and that elimination does not contravene the Due Process or Takings Clauses of the Constitution.” (Story v Green, 978 F2d 60, 63, supra.)
*492 Plaintiffs’ argument that the establishment of 200 borough-specific permits violates the Due Process Clause is also unavailing. Defendants’ goal of ensuring that those boroughs are not underserved is a legitimate one and establishing 200 borough-specific permits is rationally related to that end. (Good Humor Corp. v City of New York, 290 NY 312, 317, supra; Town of Orangetown v Magee, 215 AD2d 469, supra; Story v Green, 978 F2d 60, 62, supra.)
Plaintiffs also argue that Local Law 15 violates their rights to equal protection. They contend that they are receiving less favorable treatment than those who vend in the City’s parks or other restricted areas because those vendors will be able to hold multiple permits. They argue that location should not be the basis for such a distinction.
Defendants assert that vendors who operate in the parks are not in fact exempt from the prohibition on holding multiple permits. Rather, they are exempt from the limitation on the maximum number of permits that DOH may issue under the Administrative Code which means that the concerns about monopolization of permits is not present. Defendants also contend that vendors such as plaintiffs, who vend in public places, are not similarly situated with those who operate in private places because they pose different concerns about public safety and sidewalk sanitation.
Mobile food vendors who hold multiple permits are not members of any suspect class recognized by the United States Supreme Court or New York law. Moreover, a law which regulates the right to sell food in public places does not impinge upon fundamental rights, including the right to pursue one’s livelihood. (Story v Green, 978 F2d 60, 62, supra; Collis v Niskayuna, 178 AD2d 868, 869, supra.) Therefore, when a statute neither impinges on a fundamental right guaranteed by the Constitution nor uses a classification based on a suspect criterion such as race, nationality, alienage or gender, the law generally will not be found to violate the Equal Protection Clause unless it has no reasonable or rational basis.- (Story v Green, 978 F2d, at 62, supra.) The statute will be sustained if the Legislature could have reasonably concluded that the challenged classification would promote a legitimate State purpose. (Supra.)
Here, the court finds that defendants have a legitimate interest "in enabling a broader spectrum of individuals and entities to obtain mobile food vendor permits and in preventing illegal trafficking in this City-conferred privilege.” (Defendants’ mem *493 of law, at 15.) Moreover, the prohibition on multiple permits is rationally related to that interest. Thus, plaintiffs have not overcome the presumption of constitutionality. (Brady v State of New York, 80 NY2d 596, 602, supra, cert denied 509 US 905.)
Plaintiffs also argue that Local Law 15 is unconstitutionally vague because it gives the Commissioner unfettered discretion and does not give notice of what qualities make an individual eligible to receive a license. Local Law 15 states that mobile food vending permits shall be issued only to persons who at the time of the application have not had a permit revoked or suspended and who satisfy the Commissioner that they are fit and able to conduct, maintain or operate a food vending business. (Administrative Code § 17-307 [b] [2] [c]; [¶] [3] [b].) The Due Process Clause requires only "a reasonable degree of certainty so that individuals of ordinary intelligence are not forced to guess at the meaning of statutory terms” (Foss v City of Rochester, 65 NY2d 247, 253; Quintard Assocs. v New York State Liq. Auth., 57 AD2d 462, 465). The United States Supreme Court has stated that an "economic regulation is subject to a less strict vagueness standard because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action.” (Village of Hoffman Estates v Flipside, Hoffman Estates, 455 US 489, 498.) Here, potential vendors are not forced to guess at the meaning of Local Law 15’s terms. Section 17-317 of the Administrative Code sets forth the criteria for permit issuance and renewal. Moreover, the Commissioner will not have unfettered discretion since decisions will still be subject to the requirement that they not be arbitrary and capricious.
Finally, plaintiffs argue that Local Law 15 constitutes an unconstitutional taking of their property. Again, they argue that they have made significant investments in their businesses over the course of many years and that the failure to renew their licenses would be a taking of their property without compensation in violation of 42 USC § 1983, the Fifth and Fourteenth Amendments of the Federal Constitution and article I, § 7 of the New York Constitution. However, as seen above, they have not demonstrated that they have a property interest in holding multiple permits such as would invoke constitutional protection to such an extent. Having given vendors the ability to hold multiple permits, the City retains the power to enact new legislation altering or eliminating that *494 ability, and that elimination does not constitute an unconstitutional taking. (Story v Green, 978 F2d 60, 62, supra.)
Finally, plaintiffs have not demonstrated that defendants should be compelled to issue any permits within the cap that remain unissued. Until 1995, DOH was not required to maintain waiting lists. However, it appears that DOH informally kept such lists but those lists may have been tampered with. In any event, while Local Law 15 now requires that such lists be compiled, there is no deadline in the statute for the issuance of the permits and it is not for this court to make that determination. Accordingly, it is ordered that plaintiffs’ motion for a preliminary injunction is denied; and it is further ordered that defendants’ motion to dismiss the complaint is granted to the extent of declaring that Local Law 15 is constitutional.

 The interests protected by the Due Process Clause of the New York Constitution are the same as those protected by the Federal Constitution. (Matter of Economico v Village of Pelham, 50 NY2d 120, 124-125, supra.)